FILED

UNITED STATES DISTRICT COURT 2018 JUN 26  PM 2:48
MIDDLE DISTRICT OF FLORIDA US DISTRICT COURT
ORLANDO DIVISION MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES OF AMERICA

v.                                        CASE NO. 6:18-cr- 151 - ORL - 40 DCI
                                          18 U.S.C. § 371
HOMER ZULAICA

## INFORMATION

The United States Attorney charges:

## COUNT ONE

### A.  **Introduction**

At all times material to this Information:

1.     TRICARE was a federal health care program that provided

coverage for U.S. military members, reservists, retirees, and their dependents.

TRICARE was a federal health care benefit program, as defined by 18 U.S.C.

§ 24(b).   As such, it was illegal for an individual to pay kickbacks to a

TRICARE beneficiary to induce them to purchase, lease, order, or arrange for or

recommend purchasing, leasing, or ordering, any good, facility, service, or item

that could be paid for, in whole or in part, by TRICARE.   Further, it was illegal

for an individual to receive kickback payments in return for purchasing, leasing,

ordering, or arranging for or recommending purchasing, leasing, or ordering,

any good, facility, service, or item that could be paid for, in whole or in part, by

TRICARE.

2.     QMedRx d/b/a Home Care Solutions was a compounding pharmacy located in Orange County, Florida, in the Middle District of Florida that, among other things, produced compounded prescription creams for scars, pain, and other ailments.   QMedRx d/b/a Home Care Solutions billed TRICARE and other health care benefit programs for these creams, each of which typically ranged in price from approximately $600 to $15,000.   When licensed physicians prescribed these compounded creams to TRICARE beneficiaries, the prescriptions were routed and filled by QMedRx d/b/a Home Care Solutions in Orange County, Florida.   As a result of these prescriptions being filled, QMedRx d/b/a Home Care Solutions in Orange County, Florida received reimbursement claim payments from TRICARE.

3.     The Cooperating Defendant ("CD") was a reserve duty member of the United States Air Force stationed at Homestead Air Force Base in Homestead, Florida.   The CD was a TRICARE beneficiary and his dependents were also covered under his TRICARE plan.

4.     **HOMER ZULAICA,** on behalf of himself directly and through Iggy Z, Inc., was employed and engaged by QMedRx d/b/a Home Care Solutions as a sales representative, and eventually became the Vice President of Sales for QMedRx d/b/a Home Care Solutions.   **HOMER ZULAICA** was

responsible for marketing the compounded creams produced by QMedRx d/b/a Home Care Solutions and generating awareness on the part of licensed physicians who would prescribe the compounded creams to patients, including TRICARE beneficiaries and their dependents.   For each compounded cream prescription that was filled for a TRICARE beneficiary or their dependent by QMedRx d/b/a Home Care Solutions, as a result of **HOMER ZULAICA's** marketing efforts, **HOMER ZULAICA** received a commission of 50% of the adjudicated reimbursement paid by TRICARE minus the cost of producing the cream.

5.      Iggy Z, Inc. was a Florida corporation founded, owned, and operated by **HOMER ZULAICA** that entered into a Pharmacy Marketing Agreement for the purpose of marketing the compounded creams produced by QMedRx d/b/a Home Care Solutions.   **HOMER ZULAICA** established a bank account for Iggy Z, Inc. ("the Iggy Z, Inc. bank account").

**B.  The Conspiracy**

6.      Beginning in or about May 2013, and continuing through in or about June 2014, in the Middle District of Florida, and elsewhere, the defendant,

**HOMER ZULAICA,**

did knowingly and willfully conspire with others, both known and unknown to the United States Attorney, to commit an offense against the United States, that is, to offer and pay a healthcare kickback, by knowingly and willfully offering and

paying any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind to any person to induce such person to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole or in part under TRICARE, a Federal health care program, in violation of 42 U.S.C. § 1320a-7b(b)(2).

### C.   Manner and Means

7.      The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others:

a.      It was a part of the conspiracy that **HOMER ZULAICA** did offer the CD, a TRICARE beneficiary, cash and check payments as kickbacks in order to induce the CD and his dependents to receive compounded prescription creams produced by QMedRx d/b/a Home Care Solutions, by visiting, or providing their information to, a licensed physician who would prescribe the beneficiary and his dependents such creams.

b.      It was a further part of the conspiracy that, with **HOMER ZULAICA's** knowledge and awareness, the CD did recruit other TRICARE beneficiaries, who were paid kickbacks in exchange for receiving the compounded creams produced by QMedRx d/b/a Home Care Solutions, and for visiting, or providing their information to, licensed physicians who would prescribe the

beneficiaries such creams.

    c.    It was a further part of the conspiracy that **HOMER ZULAICA** did receive the personal information of certain TRICARE beneficiaries, including their names, dates of birth, addresses, and social security numbers, which **HOMER ZULAICA** used to establish the prescriptions for the compounded creams produced by QMedRx d/b/a Home Care Solutions that were ultimately sent to said beneficiaries.

    d.    It was a further part of the conspiracy that **HOMER ZULAICA** did recruit a licensed physician who agreed to provide the prescriptions to the aforementioned TRICARE beneficiaries or their dependents, for the compounded prescription creams produced by QMedRx d/b/a Home Care Solutions.

    e.    It was a further part of the conspiracy that conspirators, including **HOMER ZULAICA**, did cause the aforementioned prescriptions to be filled in Orange County, Florida, by QMedRx d/b/a Home Care Solutions, which then sent the compounded prescription creams to the TRICARE beneficiaries or the dependents of the beneficiaries.

    f.    It was a further part of the conspiracy that the conduct described above caused TRICARE to be billed for the compounded prescription creams that QMedRx d/b/a Home Care Solutions processed, filled, and sent to

the TRICARE beneficiaries or the dependents of the beneficiaries.

   g. It was a further part of the conspiracy that the conduct described above caused QMedRx d/b/a Home Care Solutions to receive approximately $1,271,198.68 in payments from TRICARE for these compounded prescription creams in Orange County, Florida.

### D. Overt Acts

  8. In furtherance of, and to effect the objectives of the conspiracy, the conspirators performed, and caused to be performed, overt acts in the Middle District of Florida, and elsewhere, including, but not limited to, the following:

   a. In between on or about June 14, 2013 through on or about March 24, 2014, **HOMER ZULAICA** paid the CD approximately $87,500 in kickbacks through checks drawn from the Iggy Z, Inc. bank account, in exchange for the CD, as a TRICARE beneficiary, receiving prescriptions for compounded prescription creams produced by QMedRx d/b/a Home Care Solutions, or for having his dependents do the same.   At some point during the conspiracy, **HOMER ZULAICA** also became aware that some of the funds derived from these checks also constituted payments used, in part, by the CD for recruiting other TRICARE beneficiaries or the dependents of the beneficiaries in order to induce them to receive compounded creams produced by QMedRx d/b/a Home Care Solutions.

b.     On or after July 19, 2013 through on or about November 21, 2013, the CD wrote checks or otherwise paid from his bank account monetary amounts to TRICARE beneficiaries, which constituted kickbacks paid to the TRICARE beneficiaries in order to induce them to receive compounded prescription creams produced by QMedRx d/b/a Home Care Solutions.

c.     In between on or about July 16, 2013 through on or about May 1, 2014, the CD paid, via his PayPal account, approximately $5,350 to TRICARE beneficiaries or the dependents of the beneficiaries, which constituted kickbacks paid to the TRICARE beneficiaries or their dependents in order to induce them to receive compounded prescription creams produced by QMedRx d/b/a Home Care Solutions.

d.     In between on or about May 29, 2013 through on or about April 17, 2014, the licensed physician that **HOMER ZULAICA** recruited provided several prescriptions to the aforementioned TRICARE beneficiaries or their dependents, for the compounded creams produced by QMedRx d/b/a Home Care Solutions.

e.     On or about May 29, 2013, at a Federal Express store located in Royal Palm Beach, Florida, **HOMER ZULAICA** personally faxed to QMedRx d/b/a Home Care Solutions, located in Orange County, Florida a prescription issued to a TRICARE beneficiary for the compounded creams so

that the prescription could be filled by QMedRx d/b/a Home Care Solutions.

       f.     In between on or about May 29, 2013 through on or about April 17, 2014, the above-described conduct of **HOMER ZULAICA** and other conspirators caused QMedRx d/b/a Home Care Solutions, in Orange County, Florida, to process, fill, and send the aforementioned compounded prescription creams to the aforementioned TRICARE beneficiaries or their dependents.

       g.     In between on or about May 29, 2013 through on or about April 17, 2014, the above-described conduct of **HOMER ZULAICA** and other conspirators caused QMedRx d/b/a Home Care Solutions to receive, in Orange County, Florida, approximately $1,271,198.68 in payments from TRICARE for the aforementioned compounded prescription creams.

All in violation of 18 U.S.C. § 371.

## FORFEITURE

1.     The allegations contained in Count One are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C § 982(a)(7).

2.     Upon conviction of the violation of 18 U.S.C. § 371 charged in Count One, the defendant, **HOMER ZULAICA**, shall forfeit to the United States of America, pursuant to 18 U.S.C § 982(a)(7), property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3.      The property to be forfeited includes, but is not limited to, the following: a money judgment in the amount of $625,808.90.

4.      If any of the property described above, as a result of any act or omission of the defendant:

> a.      cannot be located upon the exercise of due diligence;
>
> b.      has been transferred or sold to, or deposited with, a third party;
>
> c.      has been placed beyond the jurisdiction of the Court;
>
> d.      has been substantially diminished in value; or
>
> e.      has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

MARIA CHAPA LOPEZ
United States Attorney

By: _____
Alexander J. Kramer
Trial Attorney
Criminal Division, Fraud Section
U.S. Department Of Justice

By: _____
Joseph S. Beemsterboer
Deputy Chief
Criminal Division, Fraud Section
U.S. Department Of Justice

By: _____
Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division